UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X          Index No.:

JAMIE HODGES,

                        Plaintiff,          **COMPLAINT**

        -against-

                                            **Plaintiff Demands a**

MCGOUGH ENTERPRISES LLC, individually and          **Trial by Jury**
d/b/a MCGOUGH ACADEMY, and MEAGAN
MCGOUGH, individually,

                       Defendants.
-----------------------------------------------------------------X

Plaintiff, by and through his attorneys, Phillips & Associates, PLLC, hereby complains of the

Defendants, upon information and belief, as follows:

## NATURE OF CASE

1. Plaintiff complains pursuant to the New York State Executive Law and New York Common

   Law, seeking damages to redress the injuries he has suffered as a result of being discriminated

   against by his employer on the basis of his sex/gender, together with sexual harassment,

   retaliation, creating a hostile work environment, assault and battery, negligent infliction of

   emotional distress, and wrongful termination.

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to §1332 in that there is complete diversity of citizenship

   and the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

3. Venue is proper in this district based upon the fact that a substantial part of the events and

   omissions giving rise to the claim occurred within the Southern District of New York. 28

   U.S.C. §1391(b).

**PARTIES**

4.  Plaintiff is a male resident of England, United Kingdom.

5.  At all times material, Defendant MCGOUGH ENTERPRISES LLC, individually and d/b/a MCGOUGH ACADEMY (hereinafter "MCGOUGH ACADEMY") was and is a domestic limited liability company duly incorporated under the laws of the state of New York.

6.  At all times material, Defendant MCGOUGH ACADEMY was and is authorized to conduct business in the state of New York and does conduct business within the state of New York, with its principal office located at 281 White Plains Road, Eastchester, NY 10709 (Eastchester location).

7.  At all times material, Defendant MCGOUGH ACADEMY had three locations, including two additional locations at 1155 Phoenixville Pike #111, West Chester, PA 19380 (West Chester location) and 11711 Parklawn Drive B, Rockville, MD 20852 (Bethesda location).

8.  At all times material, Defendant MEAGAN MCGOUGH (hereinafter "MEAGAN") was and is Defendant MCGOUGH ACADEMY's Owner and Director and resides at 8001 Woodmont Avenue, Bethesda, MD 20814.

9.  At all times material, Defendant MEAGAN was Plaintiff's supervisor and/or had supervisory authority over Plaintiff.

10. Defendant MCGOUGH ACADEMY and Defendant MEAGAN are hereinafter collectively referred to as "Defendants."

11. At all times material, Plaintiff was an employee of Defendants.[1]

---

[1] Plaintiff received electronic payments from "Meagan McGough d/b/a McGough Academy". Plaintiff was on the class schedule of Defendant MCGOUGH ACADEMY as a "teacher," was asked to substitute teach dance classes, and was included in teacher group chats and email chains.

**MATERIAL FACTS**

12. According to its website, Defendant MCGOUGH ACADEMY "provides each of our dancers with an environment where you can feel comfortable and trust our staff to help you become the best dancer and person possible."[2]   Unfortunately, Defendants did not provide a comfortable or trusting environment for their staff, when Defendant MEAGAN severely and pervasively sexually harassed Plaintiff and then fired him when he rejected her advances.

13. In or around July 2018, Plaintiff began working for Defendant MCGOUGH ACADEMY as a "Consultant/Contractor" at the rate of $125.00 per hour.

14. Beginning in or around September 2019, Plaintiff took a more permanent role in Defendant MCGOUGH ACADEMY and became a full-time "Teacher," at the rate of $125.00 per hour.

15. Plaintiff's job duties included teaching Irish dance to students, individual lessons, group classes, weekend workshops, choreographing dances for competitions, substitute teaching, assisting Defendant MEAGAN with the management of Defendant MCGOUGH ACADEMY, and attending business meetings.

16. Defendant MEAGAN has achieved her Ard Diploma Coimisiún Le Rincí Gaelacha (ADCRG) "adjudicator" qualification through The Irish Dancing Commission (An Coimisiún Le Rincí Gaelacha).  This qualification gave Defendant MEAGAN senior status in the Irish dance community and the ability to judge international competitions.  Under her leadership, Defendant MCGOUGH ACADEMY was and is one of very few Irish dance schools in the Northeastern United States that is world-renowned for the success of its dancers at international competitions.  As such, Plaintiff reasonably believed that his future as an Irish dance teacher globally depended on his success at Defendant MCGOUGH ACADEMY, and therefore,

---

[2] https://www.mcgoughacademy.com/

Plaintiff felt pressured to continue his working relationship with Defendant MEAGAN, despite her regularly making him uncomfortable by sexually harassing him.

17. Plaintiff's position at Defendant MCGOUGH ACADEMY required frequent travel. Defendant MEAGAN arranged, and paid for, all flights and lodging for Plaintiff. Often, this involved Plaintiff and Defendant MEAGAN residing at her parents' house, students' houses, houses of friends and coworkers, hotels, and rented residences. Despite Plaintiff's objections, Defendant MEAGAN sometimes arranged lodging that required her and Plaintiff to share a room, and sometimes, even share a bed. Plaintiff's employment at Defendant MCGOUGH ACADEMY was contingent on his agreeing to Defendant MEAGAN's lodging arrangements.

18. Further, the all-encompassing nature of their working relationship required Plaintiff to "get along" with Defendant MEAGAN. As such, while Plaintiff was very uncomfortable around Defendant MEAGAN when she was sexually harassing him, when Defendant MEAGAN was not acting unprofessionally, they maintained a positive working friendship.

19. From the beginning of Plaintiff's employment, Defendant MEAGAN sexually harassed him on a frequent basis.

20. For example, in or around June 2019, Defendant MEAGAN arranged for her and Plaintiff to reside in the same apartment in New York while they were teaching classes at Defendant ACADEMY's Eastchester location. While standing in the living room having a conversation, out of the blue and unprovoked, **Defendant MEAGAN grabbed Plaintiff's penis**. Plaintiff pushed her hand away and told her, "Stop!"

21. From in or around June 2019 to February 2020, Defendant MEAGAN sexually harassed Plaintiff on a regular basis.

22. However, in or around March 2020 through Fall 2021, due to the COVID-19 pandemic lockdown, Plaintiff was infrequently assisting with online courses for Defendant ACADEMY instead of coming to the studio to teach. Therefore, Plaintiff's communications and interactions with Defendant MEAGAN were reduced. This gave Plaintiff a brief respite from Defendant MEAGAN's sexually harassing comments and behavior.

23. Then, in or around early October 2021, Defendant MEAGAN called Plaintiff and confessed to him that she was "crazy about" him.  Plaintiff told her that he was not romantically interested in her.  Despite Plaintiff's attempt to be clear about his lack of romantic interest, Defendant MEAGAN continued regularly sexually harassing Plaintiff.

24. From in or around December 2021 to July 2022, Defendant MEAGAN and Plaintiff did not speak due to a professional disagreement.

25. On or about July 10, 2022, Plaintiff was diagnosed with aggressive thyroid cancer.

26. On or about July 18, 2022, Defendant MEAGAN called Plaintiff crying, saying that she heard that he had been diagnosed with cancer, and apologized for not speaking to him in the months prior.  Defendant MEAGAN also told Plaintiff that she had overcome her romantic feelings for him.  Finding it noble of Defendant MEAGAN to reach out when he was sick, Plaintiff chose to reply.  Plaintiff, *again*, told Defendant MEAGAN that he never "liked [her] that way," and there would never be a romantic relationship between them.  Defendant MEAGAN agreed that a platonic, working relationship was best.

27. In or around September 2022, Plaintiff agreed to work exclusively for Defendants, with the understanding that his relationship with Defendant MEAGAN would remain platonic. However, Defendant MEAGAN once again began sexually harassing Plaintiff.

28. For example, on or about September 20, 2022, Defendant MEAGAN messaged Plaintiff on WhatsApp about someone who thought he "had [Defendant MEAGAN] over a barrel." Defendant MEAGAN responded, "**Only [Plaintiff] can bend me over**."  Plaintiff changed the subject.

29. On or about October 5, 2022, Defendant MEAGAN messaged Plaintiff "You couldn't handle my eyes looking up at you . . . **The only woman who can get you to sleep *without sleeping with you***" (emphasis added).  She then changed the subject, so Plaintiff ignored the sexual comment.

30. On or about October 13, 2022, Defendant MEAGAN messaged Plaintiff about him working with another dance studio in Canada, accusing him of "cheating."  Plaintiff replied, "They pay more."   Defendant MEAGAN then said "I'm very angry . . . I don't like cheating . . . Exclusivity . . . **I want the unicorn cock to myself**  💵 ."   Plaintiff, offended that Defendant MEAGAN turned the conversation in a sexual direction again, replied, "such a dick," to which Defendant MEAGAN replied, "**I touched it once**," referring to when she grabbed Plaintiff's penis without his consent.  Defendant MEAGAN changed the subject before Plaintiff could respond.

31. That same day, Defendant MEAGAN discussed potential legal action against a fellow Irish dance businessman who Plaintiff disliked.  Plaintiff called him a "Proven liar."  Defendant MEAGAN replied, "**Then you definitely need to fuck me**  😭 ," implying that Plaintiff would owe her sex if she successfully sued the businessman.  Plaintiff responded in all capital letters "NOPE," clearly rejecting her advance.

32. That same day, Plaintiff boarded a plane to Philadelphia on his way to the West Chester location of Defendant MCGOUGH ACADEMY.  He messaged Defendant MEAGAN, "This

flight sucks."  Defendant MEAGAN replied, "**You need me to massage you to sleep**" and "**I'm buzzed / Bend me over**."  Plaintiff changed the subject to the gym membership he received as an employee.

33. On or about October 16, 2022, Plaintiff messaged Defendant MEAGAN that he "want[s] half" of a potential deal between Defendant MCGOUGH ACADEMY and Netflix.  Defendant MEAGAN replied, "**If you sleep with me, I'll give you the entire deal / I'll die knowing I got my prey.**"  Plaintiff replied, "Ridiculous."

34. On or about October 20, 2022, while both Defendant MEAGAN and Plaintiff were flying to London, Defendant MEAGAN **showed Plaintiff multiple photographs of herself naked**, to which Plaintiff responded, "That's a bit much, [Defendant MEAGAN]."  **She then sent Plaintiff a photograph of her and another woman partially nude and engaging in sexual acts**.  Plaintiff said "Really?!" and changed the subject.

35. Defendant MEAGAN, on multiple occasions, aggressively tried to remove Plaintiff's clothes and perform oral sex on him.

36. For example, on or about October 21, 2022, while in London for a dance competition, Defendant MEAGAN booked a hotel suite for her and Plaintiff, with separate bedrooms and bathrooms, but a communal living area.  While sitting on the couch in the communal area, Defendant MEAGAN started touching Plaintiff's body.  Plaintiff said, "Nope."  Defendant MEAGAN persisted, grabbed Plaintiff's penis, and tried to rip off his pants.  Plaintiff grabbed his pants to keep them in place, pushed her off, and told her to leave the room.

37. Three days later, on or about October 24, 2022, Plaintiff and Defendant MEAGAN returned to New York.  While in the car together, Defendant MEAGAN leaned over the center console and began undoing Plaintiff's pants.  Plaintiff said, "cut it out."  Defendant MEAGAN then

drove the car to a secluded area of the city, and *again* tried to pull down Plaintiff's pants. Plaintiff pushed her off him and again told her, "I feel very uncomfortable. Cut it out. Please stop."

38. The next morning, while Plaintiff was still sleeping, Defendant MEAGAN entered Plaintiff's bedroom.  Plaintiff immediately said, "Get out!" several times.  However, Defendant MEAGAN lifted the covers at the foot of the bed and climbed in.  Plaintiff, who was naked, asked her, "what are you doing?"  Defendant MEAGAN then attempted to perform oral sex on him.  Plaintiff sternly said, "No, get out, get out, get lost, just stop!" while using his feet to prevent her from coming closer to him.

39. A couple days later, on or about October 27, 2022, Defendant MEAGAN and Plaintiff were residing in a hotel.  While Plaintiff was in the shower, Defendant MEAGAN banged on the door of the hotel room and said she needed to speak to him.  Plaintiff got out of the shower, put on a towel, and opened the door slightly.  Defendant MEAGAN pushed the door the rest of the way open, entered the hotel room, and said, "Can I see it?", referring to Plaintiff's penis. Plaintiff immediately ran to his bedroom.  Defendant MEAGAN **chased him into his bedroom and tried to rip off his towel**.  He loudly said "NOPE!" and climbed under the covers of his bed to hide from her.  She jumped into bed and again tried to perform oral sex on him.  Plaintiff yelled, "Get off!  Get off!  Get out!  I've got stuff to do today!" and forced her out of the room.

40. On or about October 28, 2022, Plaintiff spoke with Defendant MEAGAN and said that her harassment was getting out of control, and he needed to leave Defendant MCGOUGH ACADEMY in December 2022.

41. Despite Plaintiff making it clear that he needed to leave Defendant MCGOUGH ACADEMY due to Defendant MEAGAN's sexual harassment, she continued to sexually harass him.

42. For example, in or around early November 2022, Defendant MEAGAN arranged for her and Plaintiff to reside in a house, where they had different bedrooms but shared a bathroom. Defendant MEAGAN walked into Plaintiff's bedroom and saw Plaintiff naked and towel drying after a shower.  Plaintiff immediately told her to "Get out!"  She laughed, apologized, and left.

43. Later that same month, Defendant MEAGAN again arranged for her and Plaintiff to reside in a house.  She called Plaintiff into her room.  When Plaintiff got to her room, Defendant MEAGAN was completely naked.  Plaintiff said, "what the fuck," turned around, and immediately left, slamming the door.

44. Again, Plaintiff put up with Defendant MEAGAN's sexual harassment because, if he did not, he reasonably believed it would negatively and permanently affect his ability to teach Irish dance, not only at Defendant MCGOUGH ACADEMY, but anywhere in the world.

45. On or about November 11, 2022, while on a work trip in Victoria, Canada, Defendant MEAGAN was drunk and called Plaintiff saying that her life was being threatened.  In an attempt to ensure Defendant MEAGAN's safety, Plaintiff went to her hotel room and ordered her food to absorb the alcohol.  While in her hotel room, Defendant MEAGAN dropped to her knees and lunged at Plaintiff, attempting to perform oral sex on him.  Plaintiff pushed her away. She crawled toward him in an attempt to try again and slipped, banging her head against a chest of drawers.

46. On or about November 23, 2022, Defendant MEAGAN messaged Plaintiff a photograph of Plaintiff with two students, followed by "Perfect family / My dream" and "**I wish you loved me the way I love you so I could have this family**." Plaintiff replied, "You are ridiculous."

47. When Defendant MEAGAN realized that Plaintiff's December deadline to leave had arrived, on or about December 1, 2022, Defendant MEAGAN verbally apologized to Plaintiff for "getting out of hand" with her sexually harassing behavior. She asked Plaintiff if there were any conditions he would require to continue working for Defendant MCGOUGH ACADEMY. Plaintiff stated that, most importantly, Defendant MEAGAN needed to stop sexually harassing him. He also required a separate residence from Defendant MEAGAN for all lodging. Defendant MEAGAN agreed to Plaintiff's conditions and offered Plaintiff a trip to Puerto Rico as a "sign-on bonus" for remaining with Defendant MCGOUGH ACADEMY. She said they would discuss class schedules and other work matters while on the trip. Plaintiff did not immediately respond with a decision.

48. Then, on or about December 4, 2022, at Defendant MCGOUGH ACADEMY's end-of-year workshop, multiple students gave Plaintiff gifts and asked Plaintiff to continue working at Defendant MCGOUGH ACADEMY.

49. That same day, due to the guilt Plaintiff felt at the thought of leaving the students, and Defendant MEAGAN's promise to no longer sexually harass him, Plaintiff agreed to remain an employee of Defendant MCGOUGH ACADEMY.

50. However, Plaintiff's reasonable requests did not stop Defendant MEAGAN from continuing her campaign of relentless sexual harassment and assault.

51. For example, on or about December 8, 2022, Defendant MEAGAN messaged Plaintiff because she was having trouble calling him. He told her he was busy and suggested they talk once her

technology was working.  She replied, "Ok Bae.  **Love when you're angry / Didn't think you could turn me on more but you did**." Plaintiff, trying to end the conversation, replied, "Mission accomplished.  Now begone."

52. On or about December 12, 2022, while discussing booking a flight, Defendant MEAGAN messaged Plaintiff, "**Massage now** / Anything else[?]"  Plaintiff, in an attempt to remind Defendant MEAGAN that she is being inappropriate, replied, "No, will book.  THANKS BOSS."  Defendant MEAGAN continued to push, replying, "**I'll show you who's boss when I pin you down next** / **You'll do as you're told**."  Plaintiff tried to redirect the conversation by replying, "Booking NY flight now."

53. On or about December 21, 2022, Defendant MEAGAN messaged Plaintiff, "**Sharing screenshots / Dying for your love / Desperately sad back legs spread waiting for the Adonis.**"  Before Plaintiff could reject her sexual messages, she changed the subject.  Plaintiff engaged in the new conversation.

54. On or about December 22, 2022, Defendant MEAGAN messaged Plaintiff:

> you're the perfect Man.  Your eyes are like the Caribbean Sea / **You stand there Like an Adonis Waiting for your next subject** / They see you, smell you, and fall weak at their knees so they can pay the proper respect you deserve / If they're lucky, you return the adoration but not everyone is worthy of special treatment from the Adonis / Once you're pleased, you crack a joke and fulfill another void in their lives which is finding someone as witty and humorous as you / You go from the lust to the heart instantly / Oh so perfect . . . But [Plaintiff] - oh [Plaintiff] - makes them all weak. You must see your subjects in person. It's how you get your work done. / Then you make the plans, all the plans, while you assert your male dominance. They feel safe secure and protected because [Plaintiff] is here to save the day. / The children love you in the studio and you act like the perfect father, while you're scent swirls in the studio, and you make them all want you to impregna[te] them. Even the feminist liberals like Canada.

Plaintiff responded, "You are INSANE."  Referring to the students, Defendant MEAGAN continued:

> They can't lose the perfect man / So they attempt to psychoanalyze you / Some of them get their mothers involved / Anything to keep the perfect day on track / Meanwhile, some don't realize you need your head stroked, you need to be made to feel you're in control of the relationship and then you need the woman to resume on her knees while you show her how big you are / And put you right to sleep / Because, you know, being the chosen Adonis is very hard performance work to get everyone to join / So you're seen, you're loved, and you're ravished to recharge for the next conquest / Being the perfect man is not always easy, but someone has to do it / Your subjects must obey and understand the man they're trying to capture.

55. After Plaintiff tried to change the subject, Defendant MEAGAN messaged, "**Anyway - back to your cock** / The perfect glass slipper / So perfect, any woman can go for hours, days, at maximum pleasure levels / So big, Yet such a perfect size / So much entertainment.  No boredom.  And then, you give the perfect 30 seconds of making love and your scent comes into play which gets your subject to give you another 2 hours / So much needing hours and hours and hours of entertainment."  Plaintiff ignored her messages.

56. On or about January 1, 2023, Plaintiff invited Defendant MEAGAN to his hotel room to eat dinner.  Defendant MEAGAN messaged Plaintiff that she was planning to take a "painkiller" and said, "**You might get to fuck my ass while I'm high** 🤣 ."   Plaintiff replied, "You're either high or dumb 😂 ."  Defendant MEAGAN replied, "**I will suck you** / And show you."  Plaintiff ignored the message.

57. In or around January 3, 2023, while in Puerto Rico for the work trip Defendant MEAGAN promised Plaintiff for staying on as a teacher, Defendant MEAGAN invited Plaintiff to her hotel room, which she was sharing with her husband, so they could go swimming in the hotel pool.   When Plaintiff received the invitation, he reasonably believed that Defendant

MEAGAN's husband would also be present.  In her room, **Defendant MEAGAN began rubbing Plaintiff's back**.  Plaintiff tried to stop her, but **she became more aggressive and attempted to perform oral sex on him**.  Plaintiff pushed her off and told her to "Stop!"

58. On or about January 23, 2023, Plaintiff called Defendant MEAGAN and told her that her constant harassment continued to make him uncomfortable.  She replied, "If you are so uncomfortable, you should leave," and told Plaintiff she no longer wanted him to be a teacher at Defendant MCGOUGH ACADEMY, terminating Plaintiff.

59. The above are just some of the examples of the sexual harassment Plaintiff had to endure while working for Defendants.

60. Defendant MEAGAN would not have harassed Plaintiff but for his sex/gender.

61. On or about January 23, 2023, Defendants unlawfully terminated Plaintiff.

62. On or about January 23, 2023, Defendants unlawfully terminated Plaintiff because of his refusal of Defendant MEAGAN's sexual advances.

63. On or about January 23, 2023, Defendants unlawfully terminated Plaintiff because of his opposition to Defendants unlawful actions.

64. Plaintiff's employment, and the benefits of such employment, were based on his submission to, or his refusal of, Defendant MEAGAN's sexual advances.

**Post Employment Retaliation**

65. On or about May 12, 2023, in retaliation for Plaintiff rejecting her sexual advances, Defendant MEAGAN posted slanderous and defamatory statements about Plaintiff to an Irish dancing blog on the website Voy.com (hereinafter "Voy").  Defendant MEAGAN wrote, "What videos

did he (Plaintiff) send to minors?"  An *anonymous* blogger replied, "He used social media tools as part of his job as a workshop teacher to reach his target audience. Dancers."  Defendant MEAGAN replied, "**Sending your man hood to underage children is not appropriate** . . . He certainly reached his target audience alright! **Posting marketing materials is different than DMing nudes to underage girls**.  Corresponding direct to minors against child protection rules."

66. On or about May 21, 2023, Defendant MEAGAN again posted on Voy, **"[Plaintiff] likes allegedly sending videos to 14 yr olds**, wouldn't go near anything him and his brother as (sic) running."

67. All these statements are blatantly false, retaliatory, and have drastically hindered Plaintiff's ability to continue working as an Irish dance teacher anywhere in the world.

68. The above are just some of the examples of the slanderous, defamatory, and retaliatory statements Defendant MEAGAN made about Plaintiff.

69. Defendants would not have retaliated against Plaintiff but for his complaints of sexual harassment.

70. As a result of Defendant MEAGAN's predatory and intolerable treatment of Plaintiff, he suffered severe emotional distress and physical ailments.

71. As a result of Defendants' actions, Plaintiff felt and continues to feel extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

72. As a result of Defendants' discriminatory and intolerable treatment of Plaintiff, he suffered and continues to suffer severe emotional and physical distress.

73. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other

compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

74. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiffs demand punitive damages as against the Defendants, jointly and severally.

**AS A FIRST CAUSE OF ACTION**
**UNDER STATE LAW**
**<u>DISCRIMINATION</u>**

75. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

76. Executive Law §296 provides that "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's…sex…to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

77. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his sex/gender, together with sexual harassment, creating a hostile work environment, and wrongful termination.

78. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

**AS A SECOND CAUSE OF ACTION**
**UNDER STATE LAW**
**<u>RETALIATION</u>**

79. Plaintiff repeats, reiterates and realleges each and every allegation made in the above   paragraphs of this Complaint as if more fully set forth herein at length.

80. New York State Executive Law §296(7) provides that "It shall be an unlawful discriminatory

practice for any person engaged in any activity to which this section applies to retaliate or

discriminate against any person because he or she has opposed any practices forbidden under

this article or because he or she has filed a complaint, testified or assisted in any proceeding

under this article."

81. Defendants engaged in an unlawful and retaliatory practice by retaliating, and otherwise

discriminating against Plaintiff because of his opposition to Defendants' unlawful practices.

**AS A THIRD CAUSE OF ACTION**
**UNDER STATE LAW**
**AIDING AND ABETTING**
**(AS AGAINST DEFENDANT MEAGAN MCCGOUGH ONLY)**

82. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs

of this Complaint as if more fully set forth herein at length.

83. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory

practice:

      a.  "For any person to aid, abet, incite, compel, or coerce the doing of any acts

          forbidden under this article, or attempt to do so."

84. Defendant MEAGAN MCGOUGH engaged in unlawful discriminatory practice in violation

of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling, and

coercing the discriminatory conduct.

**AS A FOURTH CAUSE OF ACTION**
**UNDER THE NEW YORK COMMON LAW**
**ASSAULT AND BATTERY**
**(AS AGAINST DEFENDANT MEAGAN MCGOUGH ONLY)**

85. Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

86. That the aforesaid occurrences and resultant injuries to Plaintiff were caused by reason of the intent, carelessness, and recklessness of Defendant MEAGAN MCGOUGH, her agents, servants, and/or employees, suddenly and without provocation did physically assault and batter Plaintiff herein and did cause unwelcome contact, causing the Plaintiff to sustain damages.

**AS A FIFTH CAUSE OF ACTION**
**UNDER THE NEW YORK COMMON LAW**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**(AS AGAINST DEFENDANT MEAGAN MCGOUGH ONLY, IN HER INDIVIDUAL CAPACITY AND NOT AS AN EMPLOYER)**

87. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraph of this Complaint as if more fully set forth herein at length.

88. Defendant MEAGAN MCGOUGH breached a duty owed directly to Plaintiff that either endangered Plaintiff's physical health and safety and/or caused Plaintiff to fear for his own health and safety.  As a result of said conduct, Plaintiff suffered and continues to suffer from severe emotional distress.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A.  Declaring that the Defendants engaged in unlawful discriminatory practice prohibited by the New York Executive Law and New York Common Law, on the basis of Plaintiff's sex/gender, together with sexual harassment, retaliation, creating a hostile work environment, assault and battery, negligent infliction of emotional distress, and unlawful termination;

B.  Awarding damages to the Plaintiff, for all lost wages and benefits, past and future, back pay and front pay and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practices;

C.  Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress,

   pain and suffering and injury to reputation;

D.  Awarding Plaintiff punitive damages;

E.  Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action;

F.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper

   to remedy the Defendants' unlawful employment practices.

**JURY DEMAND**

Plaintiff requests a jury trial on all issues to be tried.


   **WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in

an amount to be determined at the time of trial, plus interest, punitive damages, attorneys' fees,

costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: June 14, 2023
       New York, New York


                                        **PHILLIPS & ASSOCIATES, PLLC**
                                        *Attorneys for Plaintiffs*


                              By:  _____
                                   Jesse S. Weinstein, Esq.
                                   45 Broadway, Suite 430
                                   New York, NY 10006
                                   (212) 248-7431
                                   jweinstein@tpglaws.com