Adam C. Weiss (AW-5752)
THE LAW FIRM OF ADAM C. WEISS, PLLC
3 School Street, Suite 303
Glen Cove, New York 11542
(516) 277-02323 (tel)
(516) 759-2556 (fax)
Email: adam@acweisslaw.com

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

JAMIE HODGES,                                          Docket No. 23-CV-05016 (NSR)

                        Plaintiff,

              -against-                                **AMENDED ANSWER**
                                                       **WITH COUNTER-CLAIMS**

MCGOUGH ENTERPRISES LLC, individually
and d/b/a MCGOUGH ACADEMY, and MEAGAN
MCGOUGH, individually,

                        Defendants.
-----------------------------------------------------------------X

Defendants, MCGOUGH ENTERPRISES LLC, individually and d/b/a MCGOUGH

ACADEMY, and MEAGAN MCGOUGH, individually, by their attorneys, The Law Firm of

Adam C. Weiss, PLLC, hereby makes this Amended Answer to the Complaint in the above-

captioned matter and asserts Counter-Claims against Plaintiff as Counter-Defendant as follows:

## NATURE OF THE CASE

1.      Defendants deny the allegations contained in Paragraph "1" of the Complaint.

## JURISDICTION AND VENUE

2.      Defendants deny the allegations contained in Paragraph "2" of the Complaint.

3.      Defendants deny the allegations contained in Paragraph "3" of the Complaint.

**PARTIES**

4.      Defendants admit the allegations contained in Paragraph "4" of the Complaint.

5.      Defendants deny the allegations contained in Paragraph "5" of the Complaint.

6.      Defendants admit the allegations contained in Paragraph "6" of the Complaint.

7.      Defendants deny the allegations contained in Paragraph "7" of the Complaint, except admit that McGough Academy had a location at 1155 Phoenixville Pike #111, West Chester, PA 19380.

8.      Defendants admit the allegations contained in Paragraph "8" of the Complaint.

9.      Defendants deny the allegations contained in Paragraph "9" of the Complaint.

10.     Paragraph "10" of the Complaint does not contain any allegations for Defendants to admit or deny.

11.     Defendants deny the allegations contained in Paragraph "11" of the Complaint.

**MATERIAL FACTS**

12.     Defendants deny the allegations contained in Paragraph "12" of the Complaint, except admit the first sentence.

13.     Defendants deny the allegations contained in Paragraph "13" of the Complaint.

14.     Defendants deny the allegations contained in Paragraph "14" of the Complaint.

15.     Defendants deny the allegations contained in Paragraph "15" of the Complaint.

16.     Defendants deny the allegations contained in Paragraph "16" of the Complaint, except admit the first two (2) sentences.

17.     Defendants deny the allegations contained in Paragraph "17" of the Complaint.

18.     Defendants deny the allegations contained in Paragraph "18" of the Complaint.

19.     Defendants deny the allegations contained in Paragraph "19" of the Complaint.

20.     Defendants deny the allegations contained in Paragraph "20" of the Complaint.

21.     Defendants deny the allegations contained in Paragraph "21" of the Complaint.

22.     Defendants deny the allegations contained in Paragraph "22" of the Complaint.

23.     Defendants deny the allegations contained in Paragraph "23" of the Complaint.

24.     Defendants deny the allegations contained in Paragraph "24" of the Complaint.

25.     Defendants deny having knowledge sufficient to admit or deny the allegations contained in Paragraph "25" of the Complaint.

26.     Defendants deny the allegations contained in Paragraph "26" of the Complaint.

27.     Defendants deny the allegations contained in Paragraph "27" of the Complaint.

28.     Defendants deny the allegations contained in Paragraph "28" of the Complaint.

29.     Defendants deny the allegations contained in Paragraph "29" of the Complaint.

30.     Defendants deny the allegations contained in Paragraph "30" of the Complaint.

31.     Defendants deny the allegations contained in Paragraph "31" of the Complaint.

32.     Defendants deny the allegations contained in Paragraph "32" of the Complaint.

33.     Defendants deny the allegations contained in Paragraph "33" of the Complaint.

34.     Defendants deny the allegations contained in Paragraph "34" of the Complaint.

35.     Defendants deny the allegations contained in Paragraph "35" of the Complaint.

36.     Defendants deny the allegations contained in Paragraph "36" of the Complaint.

37.     Defendants deny the allegations contained in Paragraph "37" of the Complaint.

38.     Defendants deny the allegations contained in Paragraph "38" of the Complaint.

39.     Defendants deny the allegations contained in Paragraph "39" of the Complaint.

40.     Defendants deny the allegations contained in Paragraph "40" of the Complaint.

41.     Defendants deny the allegations contained in Paragraph "41" of the Complaint.

42.     Defendants deny the allegations contained in Paragraph "42" of the Complaint, except admit the first sentence.

43.     Defendants deny the allegations contained in Paragraph "43" of the Complaint.

44.     Defendants deny the allegations contained in Paragraph "44" of the Complaint.

45.     Defendants deny the allegations contained in Paragraph "45" of the Complaint.

46.     Defendants deny the allegations contained in Paragraph "46" of the Complaint.

47.     Defendants deny the allegations contained in Paragraph "47" of the Complaint.

48.     Defendants deny having knowledge sufficient to admit or deny the allegations contained in Paragraph "48" of the Complaint.

49.     Defendants deny the allegations contained in Paragraph "49" of the Complaint.

50.     Defendants deny the allegations contained in Paragraph "50" of the Complaint.

51.     Defendants deny the allegations contained in Paragraph "51" of the Complaint.

52.     Defendants deny the allegations contained in Paragraph "52" of the Complaint.

53.     Defendants deny the allegations contained in Paragraph "53" of the Complaint.

54.     Defendants deny the allegations contained in Paragraph "54" of the Complaint.

55.     Defendants deny the allegations contained in Paragraph "55" of the Complaint.

56.     Defendants deny the allegations contained in Paragraph "56" of the Complaint.

57.     Defendants deny the allegations contained in Paragraph "57" of the Complaint.

58.     Defendants deny the allegations contained in Paragraph "58" of the Complaint.

59.     Defendants deny the allegations contained in Paragraph "59" of the Complaint.

60.     Defendants deny the allegations contained in Paragraph "60" of the Complaint.

61.     Defendants deny the allegations contained in Paragraph "61" of the Complaint.

62.     Defendants deny the allegations contained in Paragraph "62" of the Complaint.

63.     Defendants deny the allegations contained in Paragraph "63" of the Complaint.

64.     Defendants deny the allegations contained in Paragraph "64" of the Complaint.

65.     Defendants deny the allegations contained in Paragraph "65" of the Complaint.

66.     Defendants deny the allegations contained in Paragraph "66" of the Complaint.

67.     Defendants deny the allegations contained in Paragraph "67" of the Complaint.

68.     Defendants deny the allegations contained in Paragraph "68" of the Complaint.

69.     Defendants deny the allegations contained in Paragraph "69" of the Complaint.

70.     Defendants deny the allegations contained in Paragraph "70" of the Complaint.

71.     Defendants deny the allegations contained in Paragraph "71" of the Complaint.

72.     Defendants deny the allegations contained in Paragraph "72" of the Complaint.

73.     Defendants deny the allegations contained in Paragraph "73" of the Complaint.

74.     Defendants deny the allegations contained in Paragraph "74" of the Complaint.

## FIRST CAUSE OF ACTION

75.     Defendants repeat and reallege each and every response contained in Paragraphs "1" through "74" of this Answer with the same force and effect as if fully set forth at length herein.

76.     Defendants aver that Paragraph "76" of the Complaint contains legal conclusions as to which no response is required, and otherwise denies the allegations contained therein.

77.     Defendants deny the allegations contained in Paragraph "77" of the Complaint.

78.     Defendants deny the allegations contained in "78" of the Complaint.

## SECOND CAUSE OF ACTION

79.    Defendants repeat and reallege each and every response contained in Paragraphs "1" through "78" of this Answer with the same force and effect as if fully set forth at length herein.

80.    Defendants aver that Paragraph "80" of the Complaint contains legal conclusions as to which no response is required, and otherwise denies the allegations contained therein.

81.    Defendants deny the allegations contained in Paragraph "81" of the Complaint.

## THIRD CAUSE OF ACTION

82.    Defendants repeat and reallege each and every response contained in Paragraphs "1" through "81" of this Answer with the same force and effect as if fully set forth at length herein.

83.    Defendants aver that Paragraph "83" of the Complaint contains legal conclusions as to which no response is required, and otherwise denies the allegations contained therein.

84.    Defendants deny the allegations contained in Paragraph "84" of the Complaint.

## FOURTH CAUSE OF ACTION

85.    Defendants repeat and reallege each and every response contained in Paragraphs "1" through "84" of this Answer with the same force and effect as if fully set forth at length herein.

86.    Defendants deny the allegations contained in Paragraph "86" of the Complaint.

## FIFTH CAUSE OF ACTION

87.    Defendants repeat and reallege each and every response contained in Paragraphs "1" through "86" of this Answer with the same force and effect as if fully set forth at length herein.

88.    Defendants deny the allegations contained in Paragraph "88" of the Complaint.

## AFFIRMATIVE DEFENSES FOR EACH AND EVERY CAUSE OF ACTION

FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state any claim upon which relief can be granted.

SECOND AFFIRMATIVE DEFENSE

Defendants did not proximately cause any harm to Plaintiff.

THIRD AFFIRMATIVE DEFENSE

Any harm that Plaintiff suffered was caused by his own conduct or by conduct by others for which Defendants have no legal responsibility.

FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of estoppel or unclean hands.

FIFTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part because Defendants chose to end their business relationship with Plaintiff for legitimate non-discriminatory and non-retaliatory reasons.

SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of laches.

SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the applicable statutes of limitation.

EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of waiver.

NINTH AFFIRMATIVE DEFENSE

Plaintiff failed to mitigate his damages.

TENTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff and Meagan McGough had a consensual sexual relationship, it was Plaintiff (and not Meagan McGough) that seduced and pursued such a relationship with Meagan McGough.

ELEVENTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part because Plaintiff's Complaint is not brought in good faith for many reasons, including that Plaintiff is a serial litigant who has filed multiple dubious lawsuits against former entities with which he had business relationships, former business associates and even his own former counsel.  Plaintiff also has pursued and engaged in numerous sexual relationships with prior colleagues for the purposes of his own professional advancement and pecuniary interest.

TWELFTH AFFIRMATIVE DEFENSE

At all relevant times Defendants acted reasonably, for cause and/or in good faith toward the Plaintiff who brings this lawsuit and has not violated any rights which may be secured to him under State Discrimination Law.

THIRTEENTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part because the damages that Plaintiff seeks are necessarily speculative and not recoverable under law.

FOURTEENTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part because Plaintiff was never Defendants' employee.

FIFTEENTH AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, because Plaintiff engaged in fraudulent conduct including but not limited to taking Meagan McGough's cellphone without her permission and tampering with and/or deleting text messages between himself and Meagan McGough.

SIXTEENTH AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, because Plaintiff engaged in fraudulent conduct including but not limited to attempting to blackmail Meagan McGough by attempting to induce her to leave her husband under the threat of Plaintiff filing this action.

SEVENTEENTH AFFIRMATIVE DEFENSE

With respect to Plaintiff's claims of harassment by the Defendants contained in the Complaint are not actionable under law for many reasons, including that the words and conduct complained of were not unwelcome, were taken out of context, and/or editorialized in a manner to disguise their true intentions.

EIGHTEENTH AFFIRMATIVE DEFENSE

With respect to Plaintiff's claims of harassment by the Defendant contained in the Complaint, the words and conduct complained of are not actionable under law because they were not unwelcome because Plaintiff was a willing participant and/or Plaintiff initiated such conversations, texts and sexual encounters.

NINETEENTH AFFIRMATIVE DEFENSE

Defendants engaged in no acts or omissions which would either rise to the level required to sustain an award of punitive damages, were not motivated by evil intent, do not evidence a malicious, knowing, oppressive or fraudulent intent to deny Plaintiff's protected rights, and are not so willful or wanton as to support an award of punitive damages.

TWENTIETH AFFIRMATIVE DEFENSE

There are intervening and superseding causes for the damages Plaintiff seeks.  For example, the Plaintiff filed Complaints against third parties in other actions, and alleged in those proceedings that the actions of those third parties destroyed his career.  In those actions, third parties had accused Plaintiff of inappropriate conduct with young girls, and the Plaintiff alleged that those purportedly false allegations destroyed his career worldwide.  Therefore, Plaintiff's contention in this case that Defendant destroyed his career are baseless.

## **COUNTER-STATEMENT OF FACTS**

89.    On or about June 15, 2023, Counter-Defendant, JAMIE HODGES ("Hodges"),

filed the within action after Counter-Plaintiff, MEAGAN MCGOUGH ("McGough") rebuffed outrageous and extortionate monetary demands by Counter-Defendant.

90.     On or about June 22, 2023, Hodges filed a false criminal complaint with the Police Department in Uwchlan Township, Pennsylvania, alleging that McGough had sexually assaulted Hodges on or about December 2, 2022.

91.     Hodges knew the allegation of sexual assault was false at the time of his filing of the criminal complaint.

92.     Indeed, on or about December 2, 2022, Hodges and McGough were having a mutually consensual sexual affair.

93.     The aforementioned affair became sexual as of April 20, 2019, and continued until approximately January 13, 2023.

94.     The amount of objective proof that the nature of their relationship was consensual cannot be understated.

95.     Between 2019 and continuing through 2022, among other things clearly evincing a mutual relationship, Hodges stated the following to McGough in various text messages:

- On May 10, 2019, Hodges texted McGough:  "Mummy[1] is so good at blowing – She would win a globe"

- On May 10, 2019, Hodges texted McGough:  "Mummy does it so well"

- On May 10, 2019, Hodges texted McGough:  "Mummy is a tiger"

- On May 10, 2019, Hodges texted McGough:  "Mummy must get what she wants"

- On May 10, 2019, Hodges texted McGough:  "Mummy is a giver"

---

[1] Over the course of their relationship, Hodges began using the nickname "Mummy" to refer to McGough, which Hodges regularly utilized in a playful manner in text messages to McGough.

- On June 8, 2019 , Hodges texted McGough: "Join Jamie is going to be mummy's main man"

- On June 8, 2019, Hodges texted McGough "Oh Mummy is so good to me"

- On June 8, 2019, Hodges texted McGough "Join Jamie loves his mummy, he must join every day"

- On July 31, 2020, Hodges texted McGough: "I'll love mummy."

- On July 31, 2020, Hodges texted McGough: "I miss my mummy"

- On July 31, 2020, Hodges texted McGough: "Mummy cannot stop me"

- On July 22, 2020, Hodges texted McGough: "You're my drug – I can't give you up"

- On July 22, 2020, Hodges texted McGough: "The more you push me away the more I want you"

- On February 27, 2021, Hodges texted McGough "I want one night with mummy. Tell Carlos to get a hotel"

- On October 4, 2022, Hodges texted McGough: "Immediate ejaculation.  YES PLEASE"

- On November 27, 2022, Hodges texted McGough "I'm going to masturbate about it"

- On December 9, 2022, Hodges texted McGough "I love my mummy"

- On December 22, 2022, Hodges texted McGough, "So much need to hand hold and live day to day life, so boring Mummy knows what joining needs"

- On December 27, 2022, Hodges texted McGough "Mummy is my #1 bitch"

- On December 27, 2022, Hodges texted McGough "I love my mummy"

- On January 1, 2023, Hodges texted McGough "Come eat – my ass"

96.    On or about June 4, 2019, Hodges even suggested having threesome sex with McGough and another woman.  In a text of that date, Hodges wrote: "3way? Okay," referring to McGough and her former female college roommate.

97.    Not only was Hodges in a consensual relationship with McGough, but Hodges grew so attached to McGough that he wanted her to leave her husband so that Hodges could marry her.

98.    Starting in or about February 2020, Hodges began pressuring McGough to leave her husband.

99.    In that regard, Hodges threatened McGough that if she did not leave her husband, he would go public with their relationship in efforts to ruin her marriage, reputation and career.

100.    On February 24, 2020, during a telephone call with Hodges while McGough was in New York, Hodges started to scream and threaten McGough that unless she left her husband, he would carry out this threat to destroy her marriage, reputation and career.

101.    Upon hearing this extortionate threat, McGough became fearful for her life and began recording the conversation; on this audio recording, Hodges is clearly heard screaming to McGough that she must leave her husband "immediately."

102.    Despite Hodges' demands that McGough leave her husband, McGough refused to do so.

103.    In response, Hodges then began to extort McGough with monetary demands.

104.    Specifically, beginning in November 2020, Hodges threatened McGough that, unless she left her husband, he would manufacture a false lawsuit against her to destroy her marriage, reputation and career.  Otherwise, Hodges demanded that McGough needed to pay him money for him to go away.

12

105.    In furtherance of Hodges' blackmail campaign, in a text message dated November 25, 2020, Hodges wrote to McGough, "Leave your husband or I'll sue."  McGough refused this demand.

106.    After receiving these threats, McGough desperately wanted Hodges to accept their relationship the way it was, but without McGough leaving her husband.

107.    Thus, from 2020 to early 2023, McGough and Hodges continued their relationship, with McGough hoping that Hodges would not insist that she leave her husband.  Because Hodges had compromising information about McGough and had threatened her, she was fearful that Hodges would once again try to extort her.

108.    In January 2023, Hodges informed McGough that unless he agreed to either leave her husband to marry her, or else pay him $1 million, he would file a baseless lawsuit against her making up a purported "sexual harassment" case.

109.    Hodges explained that he had nothing to lose because his career had already been destroyed by public allegations that he had acted inappropriately with respect to young girls.

110.    McGough did not give into Hodges' extortionate demands.

111.    In response, Hodges carried out his malicious threat, and he filed this action.

112.    In this manufactured action, Hodges falsely alleges that he was sexually harassed against his will.

113.    These allegations are frivolous, as dozens of Hodges' own texts, only a fraction of which are quoted above, demonstrate that the relationship was fully consensual.

114.    Indeed, Hodges was even caught on the February 24, 2020 recording demanding that McGough leave her husband.

115.    In addition to filing this action as part of his extortion campaign, Hodges thereafter

abused process by using this civil action to purportedly support a subsequent false police report.

116.    Thus, after McGough refused to pay the $1 million extortion demand, on or about June 22, 2023, Hodges filed the aforementioned criminal sexual assault complaint in Pennsylvania.

117.    This false police report was done for the sole purpose of serving the collateral and ulterior purpose to further Hodges' terror campaign against McGough to attempt to obtain an advantage in this civil action and destroy McGough's financial and emotional well-being.

118.    Between the June 15, 2023 filing date of this action and continuing to present, Hodges continues to make false statements online and to other third-party sources completely mischaracterizing the relationship that he had with McGough in order to lead her to monetary and physical ruin.

119.    McGough has seen a psychologist to deal with the severe emotional distress that Hodges caused.

120.    Among other things, on or about September 1, 2023, Hodges was quoted in a Sunday World Article in the *Irish Independent* speaking of McGough: "I have never had any form of a relationship with her."

121.    This statement is false and Hodges knew it was false.

122.    In addition, upon information and belief, since at least June 15, 2023, Hodges has been repeating his false narrative in various Irish Dance community message boards, in the Main Irish Dance Message Board, The NEW Irish Dance Board For UK, Irish, European & Worldwide Irish Dancers & Parents, and Mid-American Irish Dance Board.

123.    On June 28, 2023 in a blatant attempt to smear McGough's name and attempt to pressure McGough to cede to extortionate settlement demands. Specifically, pointing to and attaching his false allegations in this action, Hodges posted on public chat boards, including

without limitation on Main Irish Dance Message Board, The NEW Irish Dance Board For UK, Irish, European & Worldwide Irish Dancers & Parents, and Mid-American Irish Dance Board, the following: "This woman [McGough] needs locked up!!! Read the full document. I will continue exposing this individual. These texts exchanges are disgusting."

124.    Hodges is aware that McGough is still actively attempting to make a living in the Irish Dance community, trying to retain students and solicit new ones, and honor prior contractual commitments to students.

125.    As a direct result of Hodges' smear campaign McGough has lost multiple  students, contracts to provide teaching services, the lease of her studio space in Eastchester, New York, and other financial and reputational harm.

## AS AND FOR A FIRST COUNTERCLAIM – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

126.    Counter-Plaintiff repeats and re-alleges each and every allegation set forth in 89 through 125 hereof as if fully set forth at length herein.

127.    Through Counter-Defendant's outrageous conduct as described herein and above, and continuing to the present, Counter-Defendant acted with an intent to cause, or with a reckless disregard for the probability to cause, Counter-Plaintiff humiliation, mental anguish, and substantial and enduring emotional distress.

128.    The conduct complained of herein was intentional, to destroy Counter-Plaintiff 's career and life and therefore was done with the intent to cause severe emotional distress.

129.    Counter-Defendant's actions complained of herein have gone and continue to go beyond the bounds of human decency, were and are utterly outrageous, and cannot be countenanced in civilized society.

130.    As a direct and proximate result of Counter-Defendant's conduct complained of

herein, Counter-Plaintiff suffers severe emotional distress, including, without limitation, pervasive and crippling anxiety, depression, loss of appetite and ability to work on focus, and inability to sleep and function normally.

131.    As a direct and proximate result of Counter-Defendant's actions against Counter-Plaintiff, as alleged above, Counter-Plaintiff has suffered special damages including but not limited to loss of income and benefits, and consequential damages in an amount to be proven at time of trial, in excess of the minimum jurisdictional requirements of this Court.

132.    As a further direct and proximate result of Counter-Defendant's actions against Counter-Plaintiff, as alleged above, Counter-Plaintiff has suffered and continues to suffer general, actual and specific damages including but not limited to significant and enduring emotional distress including humiliation, mental anguish and physical distress, injury to mind and body, in a sum to be proven at time of trial, in excess of the minimum jurisdictional requirements of this Court.

133.    Counter-Plaintiff is further entitled to prejudgment interest in an amount to be shown at trial.

134.    Counter-Defendant's outrageous conduct resulted in emotional distress to Counter-Plaintiff, and the devaluation of years of her life. Counter-Defendant's actions were fraudulent, malicious and oppressive. Counter-Plaintiff is thus entitled to and herein seeks punitive and exemplary damages from Counter-Defendant, in an amount according to proof at trial, to punish Counter-Defendant and deter Counter-Defendant and others from engaging in similar future conduct.

## AS AND FOR A SECOND COUNTERCLAIM – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

135.    Counter-Plaintiff repeats and re-alleges each and every allegation set forth in 89

through 134 hereof as if fully set forth at length herein.

136.    Counter-Defendant negligently engaged in certain acts as alleged herein and above, which proximately resulted in injury and emotional distress to Counter-Plaintiff.

137.    At all times material herein, Counter-Defendant knew, or in the exercise of ordinary care should have known, that unless Counter-Defendant ceased to engage in the aforementioned acts, as alleged herein, that the conduct would continue, thereby subjecting Counter-Plaintiff to personal injury and emotional distress.

138.    As a direct, proximate and foreseeable result of Counter-Defendant's actions against Counter-Plaintiff, as alleged above, Counter-Plaintiff has suffered special damages including but not limited to loss of income and benefits, and consequential damages in an amount to be proven at time of trial, in excess of the minimum jurisdictional requirements of this Court.

139.    As a further direct and proximate result of Counter-Defendant's actions against Counter-Plaintiff, as alleged above, Counter-Plaintiff has suffered and continues to suffer general, actual and specific damages including but not limited to significant and enduring emotional distress including humiliation, mental anguish and physical distress, injury to mind and body, in a sum to be proven at time of trial, in excess of the minimum jurisdictional requirements of this Court.

140.    Counter-Defendant intentionally performed acts, as set forth above, from which he knew, or should know, highly probable that harm will result to Counter-Plaintiff.

141.    Counter-Plaintiff is further entitled to prejudgment interest in an amount to be shown at trial.

142.    Counter-Defendant's negligent acts resulted in foreseeable emotional distress to Counter-Plaintiff, and the devaluation of years of her life. Counter-Defendant's actions were

fraudulent, malicious and oppressive. Counter-Plaintiff is thus entitled to and herein seeks punitive and exemplary damages from Counter-Defendant, in an amount according to proof at trial, to punish Counter-Defendant and deter Counter-Defendant and others from engaging in similar future conduct.

## AS AND FOR THIRD COUNTERCLAIM – DEFAMATION

143.     Counter-Plaintiff repeats and re-alleges each and every allegation set forth in 89 through 142 hereof as if fully set forth at length herein.

144.     On or about June 15, 2023 Counter-Defendant filed this action.

145.     Therein and thereafter, Counter-Defendant made false and disparaging, unprivileged statements about Counter-Plaintiff, which were filed with the Pennsylvania Police, global news publications and online sources and the general public, that Counter-Plaintiff engaged in sexual acts with Counter-Defendant without Counter-Defendant's consent and that Counter-Defendant never had any form of a relationship with Counter-Plaintiff.

146.     Counter-Defendant made these false, defamatory statements with knowledge that the statements were false. The false statements were published to the general public.

147.     The statements were false and malicious and thus without any absolute, qualified or conditional privilege.

148.     These words spoken were slanderous per se because they implied that Counter-Plaintiff had perpetrated a criminal act. Counter-Defendant's conduct was not privileged in as much as such statements were not made for any legitimate business purpose.

149.     As a direct and proximate result of Counter-Defendant's actions against Counter-Plaintiff, as alleged above, Counter-Plaintiff has suffered special damages including but not limited to loss of income and benefits, plus consequential damages in an amount to be proven at time of trial, in excess of the minimum jurisdictional requirements of this Court.

150.    As a further direct and proximate result of Counter-Defendant's actions against Counter-Plaintiff, as alleged above, Counter-Plaintiff has suffered and continues to suffer general damages including but not limited to significant and enduring emotional distress including humiliation, mental anguish and physical distress, injury to mind and body, in a sum to be proven at time of trial, in excess of the minimum jurisdictional requirements of this Court.

151.    Counter-Plaintiff is further entitled to prejudgment interest in an amount to be shown at trial.

152.    Counter-Defendant's false and malicious statements about Counter-Plaintiff resulted in emotional distress to Plaintiff, and the devaluation of years of her life. Counter-Defendant's actions were fraudulent, malicious and oppressive. Counter-Plaintiff is thus entitled to and herein seeks punitive and exemplary damages from Counter-Defendant, in an amount according to proof at trial, to punish Counter-Defendant and deter Counter-Defendant and others from engaging in similar future conduct.

## AS AND FOR A FOURTH COUNTERCLAIM –VIOLATION OF NEW YORK CIVIL RIGHTS LAW 52-B

153.    Counter-Plaintiff repeats and re-alleges each and every allegation set forth in 89 through 152 hereof as if fully set forth at length herein.

154.    New York Civil Rights Law Section § 52-b renders a private right of action for unlawful dissemination or publication of an intimate image.

155.    Under that Section, a person depicted in a still or video image, regardless of whether or not the original still or video image was consensually obtained, shall have a cause of action against an individual who, for the purpose of harassing, annoying or alarming such person, disseminated or published, or threatened to disseminate or publish, such still or video image, where such image: a. was taken when such person had a reasonable expectation that the image would

remain private; and b. depicts (i) an unclothed or exposed intimate part of such person; or (ii) such person engaging in sexual conduct, as defined in subdivision ten of section 130.00 of the penal law, with another person; and c. was disseminated or published, or threatened to be disseminated or published, without the consent of such person.

156.    On October 31, 2022, when Hodges and McGough were in a consensual relationship, Hodges took photos and videos of Counter-Plaintiff fully naked and engaged in sexual acts.

157.    Armed with these videos and photos, on October 31, 2022, Counter-Defendant threatened to publicly disclose and publish on the internet the images and videos unless Counter-Plaintiff gave in to his demand that Counter-Plaintiff leave her husband.

158.    When Counter-Plaintiff refused to give in to such demands, on or about January 18, 2023, Counter-Defendant then threatened Counter-Plaintiff that he would publicly publish on the internet and disclose the images or photos unless she paid him $1 million and to confessed to her husband the affair with the Counter-Defendant, so that the marriage would be destroyed.

159.    As a result of such illegal threats, Counter-Defendant violated Section 52-b.

160.    Accordingly, Counter-Plaintiff is entitled to injunctive relief preventing the Counter-Defendant from publishing the sexual photos and videos, punitive damages against the Counter-Defendant, compensatory damages and reasonable court costs and attorney fees.

### AS AND FOR FIFTH COUNTERCLAIM – ABUSE OF PROCESS

161.    Counter-Plaintiff repeats and re-alleges each and every allegation set forth in 89 through 160 hereof as if fully set forth at length herein.

162.    As set forth above, Counter-Defendant issued process, both civil and criminal, against Counter-Plaintiff with the sole intent to extort and do harm to Counter-Plaintiff without excuse or justification and in order to obtain a collateral objective that is outside the legitimate

ends of the process.

163.    Counter-Defendant's malicious campaign against Counter-Plaintiff had numerous collateral objectives such as infliction of economic harm, extortion, blackmail and retribution.

164.    Here, as set forth in great detail above, Counter-Defendant acted with collateral objectives, for which he used the frivolous civil and criminal complaints as follows:  (1) Counter-Defendant sought to accomplish that Counter-Plaintiff leave her successful husband so that Counter-Defendant could marry Counter-Plaintiff and then live off of Counter-Plaintiff's divorce settlement; (2) when Counter-Plaintiff refused to leave her husband, Counter-Defendant threatened that he would file false civil and criminal actions for the sole purpose of destroying Counter-Plaintiff's marriage; (3) when Counter-Plaintiff still refused to leave her husband, Counter-Defendant filed the frivolous civil proceeding; (4) after Hodges filed the false civil proceeding, he thereafter improperly used the civil proceeding to later support his false police report; (5) Hodges thereafter used both the false civil and criminal complaints to continue to pressure McGough to make a extortion payment.

165.    As a result, of Hodges' wrongful actions, McGough suffered damages in an amount to be determined at trial, including without limitation the legal fees that McGough is forced to pay to defend such frivolous proceedings, and the emotional distress that Hodges intended the false proceedings to case.  McGough is also entitled to punitive and exemplary damages as a result of the outrageous nature of Hodge's conduct, which goes far beyond the bounds of human decency.

**WHEREFORE**, Defendants demand judgment as follows:

(1) Dismissing the Complaint, with prejudice,

(2) As and for the first counterclaim, in a sum to be determined at trial, including punitive damages,

(3) As and for the second counterclaim, in a sum to be determined at trial, including punitive damages,

(4) As and for the third counterclaim, in a sum to be determined at trial, including punitive damages,

(5) As and for the fourth counterclaim, injunctive relief and a sum to be determined at trial, including punitive damages and attorneys' fees,

(6) As and for the fifth counterclaim, in a sum to be determined at trial,

(7) Awarding Defendants' attorneys' fees, costs and disbursements of this action, and

(8) such other and further relief as this Honorable Court deems just, equitable and proper.

Dated: September 21, 2023
        Glen Cove, New York

Respectfully submitted,

_____
Adam C. Weiss (AW-5752)
THE LAW FIRM OF ADAM C. WEISS, PLLC
3 School Street, Suite 303
Glen Cove, New York 11542
(516) 277-2323 (tel)
(516) 759-2556 (fax)
Email: adam@acweisslaw.com

*Attorneys for Defendants/Counter-Plaintiff*