USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/4/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMIE HODGES,

                        Plaintiff/Counter-Defendant,

-against-

MCGOUGH ENTERPRISES, LLC, individually and d/b/a MCGOUGH ACADEMY, and MEAGAN MCGOUGH, individually,

                        Defendants/Counter-Plaintiffs

23-cv-05016 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

*Pro se* Plaintiff/Counter-Defendant Jamie Hodges ("Plaintiff" or "Counter-Defendant") initiated this action on June 15, 2023, alleging state law claims for violations of the New York Human Rights Law § 296, assault, battery, negligent infliction of emotional distress against McGough Enterprises, LLC ("McGough Enterprises") and Meagan McGough ("McGough") ("Counter-Plaintiff").[1]

Presently before the Court is *pro se* Counter-Defendant's Motion to Dismiss Counter-Plaintiff's counterclaims pursuant to Federal Rules of Civil Procedure 12(b)(6). For the following reasons, Counter-Defendant's Motion to Dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are derived from Counter-Plaintiff's Amended Answer's and are taken as true and construed in the light most favorable to the Counter-Plaintiff at this stage.

Counter-Plaintiff and Counter-Defendant were engaged in a romantic, sexual affair from April 20, 2019, to January 13, 2023. (Answer ¶ 93.) In February 2020, Counter-Defendant began

---

[1] This Opinion & Order addresses only counterclaims brought individually by Meagan McGough and thus uses the term "Counter-Plaintiff" throughout the Opinion & Order's Background and Discussion sections since the Court confines its analysis to the counterclaims brought by Meagan McGough.

1

pressuring Counter-Plaintiff to leave her husband. (*Id.* ¶ 98.) Counter-Defendant told Counter-Plaintiff that if she did not leave her husband, Counter-Plaintiff would go public with their affair and attempt to ruin her marriage, reputation and career. (*Id.* ¶ 99.) Counter-Plaintiff refused to leave her husband, at which point Counter-Defendant extorted Counter-Plaintiff with monetary demands. (*Id.* ¶ 103.) Counter-Defendant told Counter-Plaintiff that if she did not leave her husband, he would manufacture a false lawsuit against her to destroy her marriage, reputation and career. (*Id.* ¶ 104.) In the alternative, Counter-Defendant demanded Counter-Plaintiff pay him so he would go away. (*Id.*) Counter-Defendant ultimately carried out his threat to bring a lawsuit against Counter-Plaintiff and commenced the instant action. (*Id.* ¶¶ 111, 115.)

Counter-Defendant took photographs and videos of Counter-Plaintiff naked and engaged in sexual acts that Counter-Plaintiff expected would remain private. (*Id.* ¶ 156.) Counter-Defendant threatened to publish and circulate such images and videos on the internet without Counter-Plaintiff's consent if Counter-Plaintiff did not leave her husband. (*Id.*) When Counter-Plaintiff refused to leave her husband, Counter-Defendant demanded Counter-Plaintiff pay $1 million and confess the affair to her husband. (*Id.* ¶ 158.)

Counter-Defendant published to public forums purportedly false allegations that Counter-Plaintiff raped and sexually assaulted Counter-Defendant. (*Id.* ¶ 123.) Consequently, Counter-Plaintiff, a dance teacher, lost multiple dance students, contracts for dance teaching services, and the lease of her studio space in Eastchester, New York. (*Id.* ¶ 125.) As a result of Counter-Defendant's conduct, Counter-Plaintiff has had to see a psychologist and experiences anxiety, depression, loss of appetite and an inability to work, focus, sleep or function as normal. (*Id.* ¶¶ 119, 130.)

Based on foregoing, Counter-Plaintiff brings counterclaims asserting intentional infliction of emotional distress, negligent infliction of emotional distress, defamation, abuse of process, and a counterclaim for violations of New York Civil Rights Law.

## PROCEDURAL HISTORY

On June 15, 2023, Counter-Defendant commenced this action against Defendants in his complaint. (ECF No. 1.) On August 31, 2023, Counter-Plaintiffs filed their answer to Counter-Defendant's complaint (ECF No. 10), and subsequently filed an amended answer and counterstatement of facts ("Answer") to Counter-Defendant's complaint, the latter being the operative answer. (ECF No. 13.) On September 5, 2024, Counter-Defendant filed a motion to dismiss and memorandum of law in support (the "Motion" or Mot."). (ECF No. 58.) Counter-Plaintiffs filed their opposition to Counter-Defendant's motion (the "Opposition" or "Opp."). (ECF No. 67.) Counter-Defendant filed a reply in further support of his motion to dismiss (the "Reply"). (ECF No. 72.)

## LEGAL STANDARD

### A. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S.

at 555). The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Finally, "[a] motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." *Revonate Mfg., LLC v. Acer Am. Corp.*, No. 12 Civ. 6017 (KBF), 2013 WL 342922, at *2 (S.D.N.Y. Jan. 18, 2013) (citation omitted).

## DISCUSSION

Counter-Plaintiff brings claims asserting intentional infliction of emotional distress, negligent infliction of emotional distress, defamation, abuse of process, and for violations of New York Civil Rights Law.

### A. Intentional Infliction of Emotional Distress

In order to state a claim for intentional infliction of emotional distress, a plaintiff must prove: "extreme and outrageous conduct [on the part of the defendant]; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Additionally, "New York sets a high threshold on conduct that is 'extreme and outrageous' enough to constitute intentional infliction of emotional distress."

The Court must find that Counter-Plaintiff has offered factual averments sufficient to allege an intentional infliction of emotional distress counterclaim. The factual allegations show extreme and outrageous conduct on the part of Counter-Defendant, namely threats of fabricated civil and

4

criminal actions, attempts to blackmail Counter-Plaintiff into having a romantic and sexual relationship with Counter-Defendant, and public smearing in the Irish Dance community (Answer ¶¶ 111, 123) (prong 1); Counter-Defendant clearly intended to cause Counter-Plaintiff severe distress, hence his threats and attempts to "destroy [her] financial and emotional well-being" (*Id.* ¶ 99) (prong 2); there is a clear causal connection between Counter-Defendant's conduct and Counter-Plaintiff's injuries, specifically that as a result of Counter-Defendant's conduct, Counter-Plaintiff had to see a psychologist (*Id.* ¶ 119) (prong 3), underscoring she did indeed experience severe emotional distress in the form of "pervasive and crippling anxiety, depression, loss of appetite and ability to work or focus, and [an] inability to sleep and function normally" (*Id.* ¶¶ 119, 130) (prong 4). Therefore, because Counter-Plaintiff has plausibly alleged an intentional infliction of emotional distress counterclaim, the Court denies Counter-Defendant's motion to dismiss said claim.

### B. Negligent Infliction of Emotional Distress

Counter-Plaintiff's negligent infliction of emotional distress claim is predicated on the same set of facts and relief as Counter-Plaintiff's intentional infliction of emotional distress claim. (Answer ¶¶ 131-134, 138-141.) The Court is empowered to dismiss claims that are duplicative. *See Mitchell v. Am. Arb. Ass'n*, 2018 WL 10419732, *3 (S.D.N.Y. May 17, 2018); *see also Ningbo Yang Voyage Textiles Co. v. Sault Trading*, 2019 WL 5399973, *7 (E.D.N.Y. Sept. 10, 2019) (noting that "[c]ourts frequently dismiss duplicative claims that arise 'from the same facts' and seek 'the same relief as another claim'"). Thus, the Court dismisses Counter-Plaintiff's negligent infliction of emotional distress claim as duplicative of Counter-Plaintiff's intentional infliction of emotional distress claim without prejudice with leave to amend so as to demonstrate distinct factual allegations and relief.

### C. Defamation

In order to bring forth a claim for defamation, a plaintiff must demonstrate: "(1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Egbujo v. Jackson Lewis, P.C.*, No. 3:21-CV-01450 (KAD), 2022 WL 4585688 (D. Conn. Sept. 29, 2022), *aff'd*, No. 22-2854-CV, 2023 WL 8295317 (2d Cir. Dec. 1, 2023).

The Court must conclude that Counter-Plaintiff sufficiently pleads a defamation counterclaim. Based on the allegations of the Answer, Counter-Defendant published to "public chat boards, including without limitation on Main Irish Dance Message Board, the NEW Irish Dance Board for UK, Irish, European & Worldwide Irish Dancers & Parents, and Mid-American Irish Dance Board" his purportedly false allegations that Counter-Plaintiff raped and sexually assaulted Counter-Defendant (Answer ¶ 123) (prong 1); Counter-Defendant's statements blatantly identified Counter-Plaintiff to third parties accessing the public discussion boards (*Id.*) (prong 2); Counter-Defendant's statements on said public discussion boards clearly constitute published statements to third parties (*Id.*) (prong 3); and Counter-Plaintiff's reputation has been injured as a direct result of Counter-Defendant's statements, as Counter-Plaintiff alleges that she has "lost multiple students, contracts to providing teaching services, [and] the lease of her studio space in Eastchester, New York" (*Id.* ¶ 125) (prong 4). Therefore, the Court must find that Counter-Plaintiff has sufficiently pled a defamation counterclaim against Counter-Defendant and denies Counter-Defendant's motion to dismiss said claim.

### D. New York Civil Rights Law

To plausibly allege a claim for violation of New York Civil Rights Law § 52-B, a plaintiff must show that the defendant "for the purpose of harassing, annoying or alarming [plaintiff],

6

disseminated or threatened to disseminate" an intimate image where such image" (a) was taken when such person had a reasonable expectation that the image would remain private; and (b) depicts (i) an unclothed or exposed intimate part of such person; or (ii) such person engaging in sexual conduct . . . with another person; and (c) was disseminated or published or threatened to be disseminated or published, without the consent of such person." N.Y. Civ. Rights Law § 52-b(1).

Counter-Plaintiff clearly satisfies each of the requisite elements. Counter-Defendant "took photographs and videos of Counter-Plaintiff fully naked and engaged in sexual acts," wherein Counter-Plaintiff had a reasonable expectation that such photographs and videos would remain private. (Answer ¶ 156.) Said images depicted Counter-Plaintiff engaging in sexual acts and exposed intimate parts of Counter-Plaintiff. (*Id*.) Finally, Counter-Defendant threatened to publish and disseminate such photographs and videos on the internet and photographs without Counter-Plaintiff's consent, demanding that Counter-Plaintiff leave her husband, and, after Counter-Plaintiff refused to leave her husband, demanding that Counter-Plaintiff pay Counter-Defendant $1 million and confess to her husband the affair. (*Id*. ¶ 158.) Therefore, Counter-Plaintiff has plausibly alleged a counterclaim for violations of New York Civil Rights Law § 52-B, and the Court declines to dismiss said claim.

E. **Abuse of Process**

To state a claim for abuse of process, a plaintiff must satisfy three elements: "[there was use of] (1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective." *AF Gloenco Inc. v. Ushers Mach. & Tool Co.*, No. 1:10-CV-1128 GLS/RFT, 2011 WL 4593741, at *3 (N.D.N.Y. Sept. 30, 2011) (internal citations omitted). The legal process is perverted where a litigant "makes use of the process not for the purpose of attaining its proper end, but to extort

money or to coerce action." *Bd. of Ed. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Tchrs. Ass'n, Inc.*, 46 A.D.2d 794, 796, 360 N.Y.S.2d 922, 927 (2d Dep't 1974).

As currently written, the Answer does not successfully state an abuse of process claim. Crucially, courts have held that "there must be an unlawful interference with one's person or property under color of process."' *Williams v. Williams*, 23 N.Y.2d 592, 596, 298 N.Y.S.2d 473, 476, 246 N.E.2d 333, 335 (1969). Moreover, "[a]s a matter of law, service of a summons and complaint, even if made with malicious intent, is insufficient to state a cause of action for abuse of process." *Strook & Strook & Lavan v. Beltramini,* 550 N.Y.S.2d 337, 338 (1st Dep't 1990).

Here, Counter-Plaintiff's counterclaim rests entirely on Counter-Defendant initiating civil and criminal actions against Counter-Plaintiff. (Answer ¶ 162.) The "overwhelming weight of authority" provides that the institution of an action "is not legally considered process capable of being abused." *Manhattan Enter. Grp., LLC v. Higgins*, No. 18-cv-6396, 2019 WL 4601524, at *4 (S.D.N.Y. Sept. 22, 2019); *see also Alexsey v. Kelly,* 614 N.Y.S.2d 734, 735–36 (2d Dep't 1994) "[T]he mere commencement of a judicial proceeding does not constitute abuse of process"); *Miles v. City of Hartford*, 445 F. App'x 379 (2d Cir. 2011) (noting that "an abuse of process claim may only be based on events subsequent to initiation"). Therefore, because Counter-Plaintiff has not sufficiently alleged process of the kind that is capable of being abused, the Court grants Counter-Defendant's motion to dismiss said claim without prejudice.

## CONCLUSION

For the foregoing reasons, the Court DENIES in part and GRANTS in part *pro se* Counter-Defendant Jamie Hodges's motion to dismiss Counter-Plaintiffs McGough Enterprises LLC and Meagan McGough's counterclaims. The Court GRANTS the motion as to Counter-Plaintiffs' negligent infliction of emotional distress and abuse of process counterclaims and DENIES as to Counter-Plaintiffs' intentional infliction of emotional distress, defamation, and New York Civil

Rights Law counterclaims. Counter-Plaintiffs are granted leave to file a Second Amended Answer with amended counterclaims by July 7, 2025. Counter-Plaintiffs are advised that the Second Amended Answer will replace, not supplement, the Amended Answer, and so any and all claims that they wish to pursue must be included in, or attached to, the Second Amended Answer. Should Counter-Plaintiffs file a Second Amended Answer, *pro se* Counter-Defendant is directed to answer or otherwise respond by August 21, 2025, and the parties are directed to complete and file a Case Management Plan and Scheduling Order (blank form attached) by September 11, 2025. If Counter-Plaintiffs fail to file a Second Amended Answer, with amended claims, within the time allowed, those claims that were dismissed without prejudice shall be deemed dismissed with prejudice, and the parties are directed to complete and file a Case Management Plan and Scheduling Order (blank form attached) by September 11, 2025.

      The Clerk of Court is respectfully directed to terminate the motion at ECF No. 58.

Dated:   June 4, 2025                                  SO ORDERED:
           White Plains, New York

                                                                       NELSON S. ROMÁN
                                                                United States District Judge

UNITED STATES DISTRICT COURT            Rev. Jan. 2012

SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

                                      **CIVIL CASE DISCOVERY PLAN**

                 Plaintiff(s),          **AND SCHEDULING ORDER**

   - against -

                 Defendant(s).      _____ CV _____ (NSR)

---------------------------------------------------------------x

This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1. All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2. This case [is] [is not] to be tried to a jury.

3. Joinder of additional parties must be accomplished by _____.

4. Amended pleadings may be filed until _____.

5.  Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6.  First request for production of documents, if any, shall be served no later than _____.

7.  Non-expert depositions shall be completed by _____.

    a.  Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

    b.  Depositions shall proceed concurrently.

    c.  Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8.  Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.  Requests to Admit, if any, shall be served no later than _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)


SO ORDERED.


Dated:   White Plains, New York

        _____


                                                    _____
                                                    Nelson S. Román, U.S. District Judge