UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

JAMIE HODGES,

                    Plaintiff,

          -against-

MCGOUGH ENTERPRISES LLC,
individually and d/b/a MCGOUGH
ACADEMY, and MEAGAN MCGOUGH,
individually,

                   Defendants.

----------------------------------------------------------X

MCGOUGH ENTERPRISES LLC,
individually, and MEAGAN MCGOUGH,
individually,

                Counterclaim Plaintiffs,

         -against-

JAMIE HODGES,

                Counterclaim Defendant.

----------------------------------------------------------X

**ORDER**

23 Civ. 5016 (NSR)(JCM)

Plaintiff Jamie Hodges ("Plaintiff") commenced this action on June 15, 2023, asserting

claims for aiding and abetting, assault and battery, and negligent infliction of emotional distress

against Defendant Meagan McGough ("McGough"), as well as claims for discrimination and

retaliation against McGough and Defendant McGough Enterprises LLC ("Academy")

(collectively, "Defendants") ("Complaint"). (Docket No. 1).  On July 7, 2025, Defendants filed

an amended answer and counterclaims against Plaintiff alleging intentional infliction of

emotional distress, negligent infliction of emotional distress, defamation, violation of New York

Civil Rights Law § 52-b, breach of contract for the failure to pay rent, breach of fiduciary obligations and breach of contract, and breach of employment contractual obligations. (Docket No. 86). Presently before the Court is Plaintiff's motion for a protective order. (Docket No. 125).[1] For the reasons set forth herein, the motion is denied.

## I. BACKGROUND

The Court assumes familiarity with the complicated factual and procedural history of the case and includes only the facts relevant to the pending motion.[2]

### A. Plaintiff's Allegations

The Academy is an Irish dance school owned and operated by McGough. (Docket No. 1 ¶¶ 8, 16). In 2018, Plaintiff began working for the Academy, with McGough as his supervisor. (*Id.* ¶¶ 9, 13). Plaintiff's job duties included teaching Irish dance in individual and group lessons, choreographing dances for competitions, and assisting McGough with management. (*Id.* ¶ 15). The nature of Plaintiff's work required frequent travel, which was arranged and paid for by McGough. (*Id.* ¶ 17). McGough occasionally arranged accommodations requiring her and Plaintiff to share a room or bed. (*Id.*).

Plaintiff alleges that McGough regularly sexually harassed him from June 2019 to February 2020, including grabbing his penis. (*Id.* ¶¶ 20-21). The harassment stopped during the COVID-19 pandemic. (*Id.* ¶ 22). In October 2021, McGough told Plaintiff she was "crazy about" him. (*Id.* ¶ 23). Plaintiff told her he did not reciprocate the feeling. (*Id.*). Plaintiff and McGough did not speak from December 2021 to July 2022. (*Id.* ¶ 24).

---

[1] Plaintiff's motion for a protective order was duplicatively filed as Docket No. 132.

[2] The facts set forth herein are taken from the Complaint, (Docket No. 1), counterclaims, (Docket No. 86), and the parties' briefs, (Docket Nos. 125, 133-34). The Court includes these facts "to provide [] context for the discovery" dispute and makes "[n]o factual findings with respect to the merits of the litigation." *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 440 n.1 (S.D.N.Y. 1995).

In July 2022, McGough called Plaintiff and told him she no longer had romantic feelings toward him, and they agreed to work together again platonically. (*Id.* ¶ 26). However, Plaintiff alleges McGough began sexually harassing him again in September 2022. (*Id.* ¶ 27). The Complaint details the dates of incidents in which Plaintiff alleges McGough inappropriately messaged him on WhatsApp. (*Id.* ¶¶ 28-34). McGough also sent Plaintiff inappropriate photos. (*Id.* ¶ 34). Plaintiff further contends there were several incidents in which McGough inappropriately touched his penis and tried to perform oral sex on him without consent. (*Id.* ¶¶ 35-39). Each time, Plaintiff rebuffed the advances and told McGough he was not interested. (*Id.*). Plaintiff also alleges several other incidents when McGough displayed her naked body to him, messaged him inappropriate poetry, and harassed him. (*Id.* ¶¶ 41-46, 51-57).

On January 23, 2023, Plaintiff told McGough that her behavior made him uncomfortable. (*Id.* ¶ 58). McGough then terminated his employment. (*Id.*). In May 2023, McGough began posting about Plaintiff on an Irish dance blog, accusing Plaintiff of inappropriately corresponding with underage students. (*Id.* ¶¶ 65-66).

**B. Defendants' Allegations**

Defendants allege that McGough and Plaintiff had a consensual sexual relationship from April 2019 through January 2023. (Docket No. 86 ¶¶ 112-13). The counterclaims detail many text messages sent by Plaintiff which McGough alleges demonstrate that the relationship was consensual. (*Id.* ¶¶ 115-16). For example, on October 31, 2022, Plaintiff took photos and videos of McGough naked and engaged in sexual acts. (*Id.* ¶ 214).

Plaintiff allegedly began pressuring McGough to leave her husband so they could get married. (*Id.* ¶¶ 117-18). Plaintiff also threatened to disclose their relationship if McGough did not leave her husband, thereby harming her marriage, reputation, and career. (*Id.* ¶¶ 119-21).

McGough alleges she recorded phone calls of Plaintiff making this threat. (*Id.* ¶ 121). Plaintiff also said he would publish intimate photos of McGough if she did not leave her husband. (*Id.* ¶ 215). In January 2023, Plaintiff allegedly threatened to file a sexual harassment lawsuit against McGough unless she paid him one million dollars or left her husband. (*Id.* ¶ 128).

On June 22, 2023, Plaintiff filed a criminal sexual assault claim against McGough in Pennsylvania. (*Id.* ¶ 136). In addition, Plaintiff has spoken to the media denying any relationship with McGough. (*Id.* ¶ 140). He also posted on Irish dance message boards alleging that McGough had sexually harassed him. (*Id.* ¶¶ 142-43).

## C. Procedural History

Plaintiff commenced this action on June 15, 2023, asserting claims for aiding and abetting, assault and battery, negligent infliction of emotional distress, discrimination, and retaliation. (Docket No. 1). On September 21, 2023, Defendants filed a first amended answer with counterclaims against Plaintiff alleging intentional infliction of emotional distress, negligent infliction of emotional distress, defamation, violation of New York Civil Rights Law § 52-b, and abuse of process. (Docket No. 13). Plaintiff answered on November 28, 2023.[3] (Docket No. 26). Plaintiff subsequently moved to dismiss Defendants' counterclaims. (Docket No. 58).

On June 4, 2025, Judge Nelson S. Román granted in part, and denied in part Plaintiff's motion to dismiss. (Docket No. 84). He denied the motion as to Defendants' counterclaims for intentional infliction of emotional distress, defamation, and violation of New York Civil Rights Law § 52-b. (*Id.*). He granted the motion as to Defendants' negligent infliction of emotional distress and abuse of process counterclaims, and dismissed those counterclaims without prejudice, granting Defendants leave to amend. (*Id.*). On July 7, 2025,

---

[3] Plaintiff's counsel withdrew on March 14, 2024. (Docket No. 38). Plaintiff is now proceeding *pro se*.

Defendants filed a second amended answer, asserting counterclaims for intentional infliction of emotional distress, negligent infliction of emotional distress, defamation, violation of New York Civil Rights Law § 52-b, breach of contract for the failure to pay rent, breach of fiduciary obligations and breach of contract, and breach of employment contractual obligations. (Docket No. 86).  The counterclaims contained additional factual allegations in support of the previously dismissed counterclaim for negligent infliction of emotional distress and did not replead the previously dismissed counterclaim for abuse of process. (*Id.*).

On October 8, 2025, Plaintiff filed a pre-motion letter requesting a protective order. (Docket No. 101).  The same day, Plaintiff also filed a second motion to dismiss the counterclaims. (Docket No. 103).  Judge Román denied both motions.[4] (Docket No. 106).

On January 27, 2026, Plaintiff filed the instant motion for a protective order. (Docket No. 125).[5]  Defendants opposed the motion, (Docket No. 133), and Plaintiff replied, (Docket No. 134).

## II.  DISCUSSION

As Plaintiff is *pro se*, his submissions must be "liberally construed." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Furthermore, the Court must interpret Plaintiff's submissions "'to raise the strongest arguments that they *suggest*.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)).  However,

---

[4] Plaintiff additionally filed other motions during the pendency of this litigation, including for injunctive relief and a gag order, (Docket Nos. 54, 56), for sanctions, (Docket Nos. 68, 83), and for leave to file a supplemental complaint, (Docket No. 80).  Those motions were procedurally terminated and are not relevant to the present motion.

[5] The pending motion to dismiss, (Docket No. 120), and motion for sanctions, (Docket No. 116), are being handled by Judge Román.

Plaintiff's *pro se* status does not exempt him from the "usual requirements" to succeed on the instant motion. *Houston v. Teamsters Loc.* 210, 27 F. Supp. 3d 346, 351 (E.D.N.Y. 2014).

## A.  Case Citations

As a preliminary matter, the undersigned has been unable to locate or verify several of the cases cited by Plaintiff in support of this motion, including: *Martinez v. Robinson*, 2024 WL 3662639 (S.D.N.Y. Aug. 5, 2024), (Docket No. 125 at 8)[6]; *Sobol v. Swiss Int'l Air Lines, Ltd.*, 2006 WL 3490658 (S.D.N.Y. Dec. 1, 2006), (Docket No. 125 at 10); *In re Subpoena Duces Tecum to AOL, LLC*, 2011 WL 2193806 (S.D.N.Y. June 7, 2011), (Docket No. 125 at 11); *Williams v. Novoa*, 102 F.3d 487 (2d Cir. 1996), (Docket No. 125 at 13); and *Gamache v. Steelman*, 2006 WL 2842368 (S.D.N.Y. Oct. 4, 2006), (Docket No. 125 at 15).

This raises concern that these cases may be the result of generative artificial intelligence hallucinations.[7] *See Smith v. Smith*, 5:25-CV-1077 (MAD/DJS), 2025 WL 3706691, at *2-3 (N.D.N.Y. Dec. 22, 2025).[8]  "Although in some circumstances courts will make 'some allowances for a *pro se* Plaintiff's failure to cite to proper legal authority,' it is 'no more acceptable for a *pro se* litigant to submit briefs with fake case citations than it is for a lawyer to do so.'" *Fecteau v. Safety Nat'l Cas. Corp.*, No. 25-CV-3821 (KMK), 2026 WL 821567, at *24 (S.D.N.Y. Mar. 25, 2026) (quoting *Dukuray v. Experian Info. Sols.*, 23 Civ. 9043 (AT)(GS), 2024 WL 3812259, at *11-12 (S.D.N.Y. July 26, 2024)).

---

[6] All page number citations herein refer to the page number assigned upon electronic filing unless otherwise noted.

[7] "Generative artificial intelligence tools can fabricate or 'hallucinate' legal precedent." *Romero v. Goldman Sachs Bank USA*, 1:25-cv-2857-GHW, 2025 WL 1916119, at *1 (S.D.N.Y. June 25, 2025).

[8] If Plaintiff does not have access to cases cited herein that are available only by electronic database, then he may request copies from Defendants' counsel. *See* Local Civ. R. 7.2 ("Upon request, counsel must provide the pro se litigant with copies of such unpublished cases and other authorities as are cited in a decision of the court and were not previously cited by any party.").

Therefore, Plaintiff is directed to provide copies of the aforementioned cases to the Court within one week of the entry of this Order.  Further, Plaintiff is advised that "filings with citations to nonexistent cases may result in sanctions, such as [his] submissions being stricken, filing restrictions or monetary penalties being imposed, or the case being dismissed." *Dukuray*, 2024 WL 3812259, at *12.

## B.  Motion for a Protective Order

Plaintiff moves for a protective order under Federal Rule of Civil Procedure 26(c)(1). (Docket No. 125).  Rule 26 governs "[t]he scope of discovery in a federal civil action," *Nat'l Rifle Ass'n of Am. v. Cuomo*, 332 F.R.D. 420, 428 (N.D.N.Y. 2019), and sets forth:

> A party or any person from whom discovery is sought may move for a protective order . . . .  The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action.  The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (A) forbidding the disclosure or discovery;
>
> (B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;
>
> (C) prescribing a discovery method other than the one selected by the party seeking discovery;
>
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
>
> (E) designating the persons who may be present while the discovery is conducted;
>
> (F) requiring that a deposition be sealed and opened only on court order;
>
> (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

> (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

(Fed. R. Civ. P. 26(c)(1)).  "[T]he party or person seeking a protective order [must] demonstrate good cause for its issuance." *In re Terrorist Attacks on Sept. 11, 2001*, 454 F. Supp. 2d 220, 221 (S.D.N.Y. 2006).  "Good cause exists when the party seeking protection demonstrates that 'disclosure will result in a clearly defined, specific and serious injury.'" *Burks v. Stickney*, Civil Action No. 9:16-CV-0759 (FJS/DEP), 2017 WL 1401312, at *4 (N.D.N.Y. Apr. 19, 2017) (quoting *Schiller v. City of New York*, No. 04 Civ. 7922 (KMK)(JCF), 2007 WL 136149, at *5 (S.D.N.Y. Jan. 19, 2007)).  However, "broad allegations of harm are not sufficient to establish good cause." *Shingara v. Skiles*, 420 F.3d 301, 306 (3d Cir. 2005); *see also AMW Material Testing, Inc. v. Town of Babylon*, 215 F.R.D. 67, 72 (E.D.N.Y. 2003) ("To show good cause, particular and specific facts must be established rather than conclusory assertions.").  Moreover, "[g]ood cause must be established and not merely alleged." *United States v. Talco Contractors, Inc.*, 153 F.R.D. 501, 513 (W.D.N.Y. 1994).

Plaintiff argues that a protective order is necessary "to halt a persistent and targeted harassment orchestrated by" McGough. (Docket No. 125 at 1).  Plaintiff alleges that McGough harassed him by messaging his mother on October 9, 2024, and posting about him on public forums between 2023 and September 28, 2025. (*Id.* at 5-6).  In support of his request, Plaintiff provided: (1) a screenshot of a message to his mother from McGough, (Docket No. 125-1); (2) Instagram messages from an account called "tattletreble," (Docket No. 125-2); (3) the LinkedIn profile of Erin O'Brien, (Docket No. 125-3); (4) Instagram messages from an account called "artsluvnyc," (Docket No. 125-4); (5) an e-mail from Plaintiff on October 13, 2024, enclosing a copy of a motion for injunctive relief, (Docket No. 125-5); (6) links to a message board about

Irish dance, (Docket No. 125-6); (7) a September 28, 2025 e-mail exchange between Plaintiff and Defendants' counsel, (Docket No. 125-7); (8) Plaintiff's declaration, (Docket No. 125-8); and (9) a posting to a message board about Irish dance, (Docket No. 125-9).

Defendants assert that Plaintiff is attempting to use this motion to stall discovery without a sufficient basis. (Docket No. 133 at 6-7). However, Plaintiff asserts that it is McGough's harassment which is delaying discovery, not his request for a protective order. (Docket No. 134 at 6).

### 1.  Meet and Confer

On September 28, 2025, Plaintiff e-mailed Defendants' counsel to address the alleged harassment. (Docket No. 125-7). In the e-mail, Plaintiff asked Defendants' counsel to "confirm in writing that [he has] advised [his] client to stop [harassing Plaintiff] immediately." (*Id.* at 2). Plaintiff did not request to schedule a time to meet and confer with counsel. (*Id.*). Counsel responded that he would "raise it" with McGough and "advise her accordingly as may be appropriate." (*Id.*). Plaintiff argues this response was "wholly inadequate." (Docket No. 125 at 2).

Plaintiff alleges that this e-mail exchange constitutes a meet and confer, as required under Federal Rule of Civil Procedure 26(c)(1) before a party can move for a protective order. (Docket No. 125 at 2). However, without prior court approval, "an exchange of e-mails does not satisfy the meet and confer requirement." *Norris v. Gen. Elec. Emps. Fed. Credit Union*, No. 3:19-cv-741 (SRU), 2020 WL 6198844, at \*3 (D. Conn. Oct. 22, 2020); *see also Adams v. Co-op City Dep't of Pub. Safety*, 21-CV-2675 (DEH)(BCM), 2024 WL 402856, at \*3 (S.D.N.Y. Feb. 2, 2024) (providing explicit permission from the court that "the parties may satisfy the meet-and-confer requirement through courteous and timely [e-mail] communications"). "In this judicial

district, it has long been known that the meet-and-confer requirement 'means to meet, in person or by telephone.'" *Shim-Larkin v. City of New York*, 16-CV-6099 (AJN)(KNF), 2018 WL 3187327, at *8 (S.D.N.Y. June 28, 2018) (quoting *Mika v. Four Seasons Hotels*, No. 98 Civ. 5972 (AGS)(DFE), 1999 WL 47319, at *1 (S.D.N.Y. Feb. 1, 1999)).

Therefore, Plaintiff has not satisfied the threshold requirement to move for a protective order, so the present motion can be denied on this ground alone. *See Multi-State P'ship for Prevention, LLC v. Kennedy*, 24-CV-00013 (JMW), 2024 WL 3758802, at *8 (E.D.N.Y. Aug. 12, 2024). Furthermore, the Court notes that Plaintiff does not allege that there have been any instances of harassment since his September 28, 2025 e-mail to Defendants' counsel. Thus, this dispute appears to have been resolved.

### 2. Good Cause

Moreover, assuming, *arguendo*, that there remains an active dispute and the parties satisfied the meet-and-confer requirement, Plaintiff has not demonstrated that there is good cause for the entry of a protective order. (*See* Docket No. 106). "[A] court may issue a protective order when, for good cause shown, the order is required by justice to protect the party from annoyance, embarrassment, or oppression." *Condit v. Dunne*, 225 F.R.D. 113, 115 (S.D.N.Y. 2004). When courts find good cause to enter a protective order, the subject cases "usually involve a litigant's concern that private information obtained in discovery will become public." *Rofail v. United States*, 227 F.R.D. 53, 56 (E.D.N.Y. 2005). Additionally, "[m]aterials that contain 'a trade secret or other confidential research, development, or commercial information' are subject to protective orders." *Application of Akron Beacon J.*, No. 94 Civ. 1402 (CSH), 1995 WL 234710, at *10 (S.D.N.Y. Apr. 20, 1995) (quoting Fed. R. Civ. P. 26(c)(7)).

Here, Plaintiff has not argued that a protective order is needed because of sensitive materials which should not be made public.  Rather, Plaintiff asserts that it is "McGough's persistent harassment" which justifies the entry of a protective order. (Docket No. 125 at 7).  However, Plaintiff has not explained the risk of harm if the Court does not enter a protective order beyond reiterating the allegedly harassing acts he has already endured. (*Id.*; Docket No. 134 at 6).  This argument "merely asserts generalized and unsupported claims of harm that might result from disclosure." *Allen v. City of New York*, 420 F. Supp. 2d 295, 302 (S.D.N.Y. 2006)).  Therefore, Plaintiff has not established a "'clearly defined and serious injury' that would result from disclosure." *Id.* (quoting *Cohen v. Metro. Life Ins. Co.*, No. 00Civ.6112 (LTS)(FM), 2003 WL 1563349, at *1 (S.D.N.Y. Mar. 26, 2003)).  Thus, Plaintiff's motion for a protective order is denied.

### 3.  Relief Requested

Moreover, Plaintiff's requested relief does not appear to fall within the scope of Federal Rule of Civil Procedure 26(c)(1).  Plaintiff does not identify specific discovery requests for which he seeks a protective order.[9]  Rather, Plaintiff requests that the protective order include: (1) a "discovery stay for 90 days from December 2, 2025, renewable upon a showing of continued good cause"; (2) a "[p]rohibition on inquiries into harassed areas without Court approval"; (3) a "[c]onfidential designation of sensitive materials"; (4) "[a]n injunction barring McGough from all direct or indirect contacts, including with Plaintiff's mother, via any means, for the pendency of this action"; and (5) "[c]lawback provisions and order termination upon

---

[9] The Court notes that the parties' submissions largely focus on discrediting one another's representation of material facts. (Docket Nos. 125, 133-34).  However, this "motion is not the proper forum for deciding the merits" of the claims or counterclaims. *Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co.*, No. 90 Civ. 7811 (KC), 1993 WL 437767, at *3 (S.D.N.Y. Oct. 26, 1993).  Therefore, those arguments are not relevant to the Court's analysis of the present motion.

resolution." (Docket No. 125 at 15).  In his Reply, Plaintiff asserts that there are "specific vulnerabilities in the discovery requests, including interrogatories in paragraphs 109-145 that probe personal relationship and depositions in paragraphs 168-170 that risk exploitation amid ongoing harassment." (Docket No. 134 at 6-7).  However, neither party provided the language of those paragraphs in their submissions.  Further, Plaintiff does not set forth any "clearly defined, specific and serious injury" if the Court does not enter a protective order. *Shingara*, 420 F.3d at 306.

In *Wiwa v. Royal Dutch Petroleum Co.*, the court denied a similar request where the "protective order sought [was] not directed at any specific discovery request or even to a specific subject matter." No. 96 CIV 8386 (KMW)(HBP), 2006 WL 2724024, at *2 (S.D.N.Y. Sept. 22, 2006).  Rather, the protective order sought a prohibition against "continued harassment." *Id.*  The court determined that request was "entirely redundant of the protections already afforded by the Federal Rules" and "so vague as to be meaningless." *Id.*  "Protective orders are ordinarily directed to specific discovery requests or specific subject matters," and the case law does not support a protective order against "harassment." *Id.*  Therefore, the court determined "such a protective order would serve no purpose whatsoever," and denied the application. *Id.*

The same is true here.  Plaintiff has not demonstrated that there is a specific issue for the requested protective order to address.  Plaintiff's "broad allegations of harm are not sufficient to establish good cause." *Shingara*, 420 F.3d at 306; *see also Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710 F.2d 940, 944-45 (2d Cir. 1983) ("Rule 26 . . . is not a blanket authorization for the court to prohibit disclosure of information whenever it deems it advisable to do so, but is rather a grant of power to impose conditions on *discovery* in order to prevent injury,

harassment, or abuse of the court's processes."). Accordingly, Plaintiff's motion for a protective order under Federal Rule of Civil Procedure 26(c)(1) is denied.

## C. Sanctions

Plaintiff's motion for a protective order also requests sanctions under Federal Rule of Civil Procedure 37(a)(5). (Docket No. 125 at 15). Federal Rule of Civil Procedure 37(a)(5) "'applies to [an] award of expenses' made in connection with an application for a protective order." *FD Special Opportunities V, LLC v. Silver Arch Cap. Partners*, 21-CV-0797 (JLR)(OTW), 2022 WL 17730098, at *1 (S.D.N.Y. Dec. 15, 2022) (alteration in original) (quoting Fed. R. Civ. P. 26(c)(3)). After the court rules on a motion for a protective order, it is within the court's discretion to require "the losing party . . . to pay the expenses incurred in relation to the motion." *Kamps v. Fried, Frank, Harris, Shriver & Jacobson L.L.P.*, No. 09 Civ. 10392 (RMB)(KNF), 2010 WL 5158183, at *3 (S.D.N.Y. Dec. 9, 2010) (internal quotation omitted).

Here, the Court is denying Plaintiff's motion for a protective order. Therefore, Plaintiff is not entitled to recover expenses under Federal Rule of Civil Procedure 37(a)(5), and Plaintiff's request for sanctions related to the instant motion is denied.

## D. Civility

Despite the personal and inherently adversarial nature of this dispute, the parties are reminded that *ad hominem* attacks, harassment, and attacks on each other's character have no place before the Court. *See Dealer Comput. Servs., Inc. v. Curry*, No. 12 Civ. 3457(JMF)(JLC), 2013 WL 499520, at *1 n.1 (S.D.N.Y. Feb. 7, 2013) ("The Court cautions counsel for both sides not to make *ad hominem* attacks, either directly or indirectly."). "Neither innuendo nor criticism of adversary counsel has any place in submissions to the Court." *Id.* This prohibition applies to

all parties to this litigation equally. *See Azzarmi v. 55 Fulton Mkt.*, 20-CV-6835 (GBD)(BCM), 2022 WL 3867850, at \*3 (S.D.N.Y. Aug. 30, 2022) ("*Pro se* parties, like attorneys, are expected to approach discovery cooperatively and deal courteously with their adversaries.").

Therefore, all submissions to the Court should focus on the law and application of relevant facts to "sharply . . . present[] the merits of the case rather than mak[e] repeated challenges to the good faith and professionalism" of their adversaries. *Gortat v. Capala Bros.*, No. 07–CV–3629 (ILG), 2008 WL 5273960, at \*4 (E.D.N.Y. Dec. 18, 2008), *aff'd*, 568 F. App'x 78 (2d Cir. 2014). The use of "abusive and insulting language can lead to significant sanctions," including but not limited to striking the parties' submissions and dismissing the claims or counterclaims. *Azzarmi*, 2022 WL 3867850, at \*3.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for a protective order is denied. Plaintiff is ordered to file copies of the cases cited in his briefing within one week of the entry of this Order, *see supra* Section II.A, and Plaintiff is advised that future filings with citations to nonexistent cases may result in sanctions, including but not limited to dismissal of the case.

The Clerk of Court is respectfully requested to terminate the pending motion (Docket Nos. 125, 132), and mail a copy of this Order to the *pro se* Plaintiff.

Dated:   May 26, 2026
         White Plains, New York

**SO ORDERED:**

*Judith C. McCarthy*

JUDITH C. McCARTHY
United States Magistrate Judge
